Sean E. Brearcliffe (AZ Bar No. 016861)
RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Email: sbrearcliffe@rllaz.com
Telephone: (520) 792-4800
Facsimile:  (520) 529-4262

Raymond P. Niro *(Pro Hac Vice)*
Raymond P. Niro, Jr. *(Pro Hac Vice)*
Brian E. Haan *(Pro Hac Vice)*
Daniel R. Ferri *(Pro Hac Vice)*
NIRO, HALLER & NIRO
181 W. Madison St., Suite 4600
Chicago, Illinois  60602
Email: rniro@nshn.com
Email: rnirojr@nshn.com
Email: bhaan@nshn.com
Email: dferri@nshn.com
Telephone: (312) 236-0733
Facsimile:  (312) 236-3137

*Counsel for JEDI TECHNOLOGIES, INC.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jedi Technologies, Inc., an Arizona corporation,<br><br>       Plaintiff,<br><br> vs.<br><br>SpeedDate.com, Inc., a Delaware corporation,<br><br>       Defendant. | Case No. 4:11-cv-00304-TUC-JGZ<br><br>**PLAINTIFF JEDI TECHNOLOGIES, INC.'S *MARKMAN* REPLY BRIEF** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ..................................................................................................... 2

    A.    '098 Patent, Claim 4, "automated display of human participant-specific
          data" and "automatically displaying at least a portion of the sorted human
          participant specific data to at least one participant" ..................................... 2

        1.    Preamble is not a limitation .............................................................. 2

        2.    "display" ........................................................................................ 3

        3.    "automatic" .................................................................................... 3

    B.    '098 Patent, Claim 4, "real-time network" ................................................... 4

    C.    '098 Patent, Claim 4, "collecting human participant specific data"; and '977
          Patent, Claim 1, "collecting user specific data and preferences" ................. 5

    D.    '098 Patent, Claim 4, "presenting to the human participant an on-line
          survey" .......................................................................................................... 6

    E.    '098 Patent, Claim 4, "processing the stored human participant specific
          data, using the compatibility criteria" .......................................................... 6

        1.    "processing" .................................................................................... 6

        2.    "compatibility criteria" ................................................................... 7

    F.    '098 Patent Claim 4, '977 Patent Claim 1, "compatibility criteria" ............. 7

    G.    '098 Patent, Claim 4, "to determine interpersonal compatibility between at
          least two network participants" .................................................................... 8

    H.    '098 Patent Claim 4, '977 Patent Claim 1, "compatibility criteria [that]
          includes at least one characteristic and a threshold" ................................... 9

        1.    "characteristic" ............................................................................... 9

        2.    "threshold" ...................................................................................... 9

    I.    '098 Patent, Claim 4, "applying the compatibility criteria to a plurality of
          records" ......................................................................................................... 10

J.   '098 Patent, Claim 4, "wherein the participant specific data includes a chat time a first participant is available to chat" ................................................. 10

K.   '098 Patent, Claim 4, "to solicit an auto-response indicating whether the compatible participant wishes to chat with said first participant during the time indicated as available to chat" ............................................................. 11

L.   '098 Patent, Claim 7, "personality trait derived from data provided by the user"; '098 Patent, Claim 8, "psychological personality trait" .................. 11

M.   '977 Patent, Claim 1, "automatically prompting" ....................................... 12

N.   '977 Patent, Claim 1, "accessing pre-existing data associated with a user"; '977 Patent, Claim 1, "where the pre-existing data is available prior to initiation of collecting data for the user" ..................................................... 13

O.   '977 Patent, Claim 1, "and thereby indicating interpersonal compatibility between the users" ................................................................................... 15

P.   '977 Patent, Claim 2, "publicly available" .................................................. 15

III.   CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Catalina Mktg. Int'l v. Coolsavings, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)................................................................. 2

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*
  381 F.3d 1111 (Fed. Cir. 2004)........................................................ 10, 11

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ...................................................... 1, 7, 8

*Liebel-Flarsheim v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)............................................................. 14

*Pitney Bowles, Inc. v. Hewlett-Packard, Co.*,
  182 F.3d 1298 (1999).......................................................................... 3

*Sythnes USA, LLC v. Diverse Surgical Supplies, Inc.*
  2011 U.S. Dist. LEXIS 14074. . (D. Ariz. Jan. 21, 2011) ..................... 6, 9, 12

*Vitronics Corp. v. Conceptronic*,
  90 F.3d 1576 (Fed. Cir. 1996)............................................................. 7

*White v. Dunbar*,
  119 U.S. 47 (1886) ............................................................................ 1

Pursuant to the Court's September 13, 2011 Scheduling Order, Dkt. No. 24, and the Court's February 10, 2012 Order Granting an Extension of Time, Plaintiff Jedi Technologies, Inc. ("Jedi") hereby provides its *Markman* Reply Brief.

## I.   __INTRODUCTION__

Defendant SpeedDate.com, Inc. ("SpeedDate") has asked the Court to construe twenty phrases/terms, but offers little explanation as to how these terms and phrases actually lack clarity. Indeed, SpeedDate "seem[s] to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express." *White v. Dunbar*, 119 U.S. 47, 51 (1886). Such is not the case, of course, and in claim construction "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. 112 ¶ 2).

The claim language of the asserted U.S Patents, Nos. 7,401,098 C1 ("the '098 Patent") and 7,885,977 (the '977 patent") is clear; and the alterations and limitations proposed by SpeedDate should be rejected as unnecessary and lacking support in the intrinsic record.

## II.    ARGUMENT

**A.**    **'098 Patent, Claim 4, "automated display of human participant-specific data" and "automatically displaying at least a portion of the sorted human participant specific data to at least one participant"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| automated display of human participant-specific data | Preamble is not a limitation. If the Court determines a construction is necessary, Jedi proposes:<br><br>Automated display of data specific to individual network participants | visual presentation of data associated with a user on a screen, wherein such depiction occurs without user intervention |
| automatically displaying at least a portion of the sorted human participant specific data to at least one participant | Providing at least a portion of the sorted data specific to individual network participants to at least one participant without requiring the participant to click on the profiles of every participant to determine compatibility | visually presenting on a screen at least a part of at least one other user's data to a first user, wherein such presentation occurs without user intervention |

Because of the overlap in language, the parties have addressed the above-two phrases together. The parties dispute the constructions of the words "display" and "automatic," as well as whether the claim 4 preamble, inclusive of the phrase "automated display of human participant-specific data," is limiting and in need of construction.

### 1.    Preamble is not a limitation

SpeedDate contends that the claim 4 preamble is limiting because it refers to a participant of a "real-time network," and this term appears nowhere in the body of the claim. (Def.'s Br. at 10.) The mere fact, however, that a term appears only in a claim's preamble does not compel the conclusion that it is a limiting element of that claim. In particular, a stated intended use may appear only in the preamble; and where a preamble

only states an intended use for an invention, it is not limiting. *Catalina Mktg. Int'l v. Coolsavings, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Here, "real-time network" refers to an intended use of the claimed method: use in a "real-time network." SpeedDate attempts to refute this by pointing to the title of the '098 Patent. (Def.'s Br. At 10.) A patent's title, however, is of little or no consequence to the process of claim construction. *Pitney Bowles, Inc. v. Hewlett-Packard, Co.*, 182 F.3d 1298, 1313 (1999).

### 2.    "display"

Nothing in the intrinsic record suggests that it is anything other than a single entity that performs all the steps of the disclosed invention. SpeedDate does not argue to the contrary. Yet, by construing the term "display" as "visual presentation of data . . . on a screen" SpeedDate threatens to cause the claim to read otherwise.

By way of example: Bob may display his stamp collection to Sam via webcam. But is it Bob *or Sam's computer* that visually presents the stamp collection on a screen? That is another question, and thus the problem with SpeedDate's construction. Rather than providing clarity to the claim, SpeedDate's construction creates confusion as to who/what is performing the "displaying" step despite the absence of any such confusion in the intrinsic record.

### 3.    "automatic"

SpeedDate's construction of "automatic" to mean "without user intervention" is too severe. Again, by way of example, an ATM is an *automated* teller machine, but it does not function "without user intervention." In fact, it requires some user intervention (e.g. putting in one's card and pin code). So it is with the invention described in the '098

Patent which requires that a participant engage with the network so that participant compatibility can be determined.

As used in the patent, "automatic" refers only to the fact that a participant does not have to pro-actively search for compatible participants, but instead will be notified of such participants. ('098 Patent, Col. 5: 37-60.) The claimed method does not preclude the participant from pro-actively searching for compatible participants, but assures the participant that she may nevertheless be "automatically" notified of those compatible profiles on which she does not click. Thus, the claimed method provides data specific to individual network participants "without requiring the participant to click on the profiles of every participant to determine compatibility."

### B.    '098 Patent, Claim 4, "real-time network"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Preamble is not a limitation.  If the Court determines a construction is necessary, Jedi proposes:<br><br>Computer network allowing for immediate communication | a network that simulates a live experience |

The term "real-time network" appears in the preamble to claim 4, and as discussed above, Jedi contends that this preamble is not limiting and in need of construction. Should the Court find it necessary to construe "real-time network," Jedi's construction best comports with the network disclosed in the '098 Patent's specification. The '098 specification says that the invention relates to "Chat Room" systems. ('098 Patent, Col. 2: 55-56.) The specification is indifferent to a "Chat Room" system's similarity to a live experience, but explicitly describes these systems as networks through which people can

converse. ('098 Patent, Col. 3: 10-13.) Thus, within this context, a "real-time" network is one "allowing for immediate communication."

### C.   '098 Patent, Claim 4, "collecting human participant specific data"; and '977 Patent, Claim 1, "collecting user specific data and preferences"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| collecting human participant specific data | Plain and ordinary meaning. If the Court determines a construction is necessary, Jedi proposes:<br><br>Collecting data specific to individual network participants | MODIFIED: collecting data about a user |
| collecting user specific data and preferences | Plain and ordinary meaning. If the Court determines a construction is necessary, Jedi proposes:<br><br>Collecting data and preferences specific to individual network participants | MODIFIED: collecting data about a user and information regarding qualities a user desires in a match |

The parties addressed the above-two terms together because of their overlap in language. Jedi does not understand why either of these terms needs construction, and SpeedDate provides no explanation in its brief. However, if the Court determine that a construction is necessary it should reject SpeedDate's equation of preferences with "information regarding qualities a user desires in a match."

SpeedDate argues that because the specification (shared by both patents) uses the term "preferences" only in regards to compatibility, it must be constrained to preferences for the qualities of another individual. (Def.'s Br. at 12.) This argument ignores the fact that individuals' preferences for things outside of each other may have a significant impact on compatibility. It also ignores that the specification specifically discusses this

reality. ('098 Patent, Col. 5:15-27.)

**D.    '098 Patent, Claim 4, "presenting to the human participant an on-line survey"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | causing an on-line survey to be visually depicted on a screen to a user |

SpeedDate omits any discussion as to how "presenting to the human participant an on-line survey" lack clarity. In fact, SpeedDate effetively admits that the phrase, as written, can be interpreted in only one way. ("Logically, it is hard to understand how a user could be "presented" with an "on-line survey" that is not "visually depicted on a screen.") Where the meaning of term is clear from the plain language of the claim, no further construction is necessary. *See, e.g. Sythnes USA, LLC v. Diverse Surgical Supplies, Inc.* 2011 U.S. Dist. LEXIS 14074. at *27. (D. Ariz. Jan. 21, 2011).  Adopting SpeedDate's construction will at best add confusion, and at worst change the scope of the claim.

**E.    '098 Patent, Claim 4, "processing the stored human participant specific data, using the compatibility criteria"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Processing the stored data specific to individual network participants, using the criteria for determining that two or more people are compatible | using predetermined metrics to compare multiple users' data |

**1.    "processing"**

SpeedDate construes 'processing' as "comparing." Yet in the language of the claim, the "step of processing . . . *includes retrieving* at least one compatibility criteria . . . *and applying* the compatibility criteria to a plurality of records." ('098 Patent, Ex Parte

Reexam Cert, Col. 1:53-58.) SpeedDate provides no evidence to suggest that the term "comparing" is commonly understood to encompass "retrieving" and "applying." Nor does SpeedDate offer evidence that the patentee has acted as his own lexicographer and used the word "processing" in such an uncommon manner. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). SpeedDate's construction should thus be rejected.

### 2.    "compatibility criteria"

SpeedDate takes one use of the term "metrics" in the specification and concludes that it should be substituted for "criteria" throughout the entirety of the patent. (Def.'s Br. at 16.) The claim construction process honors the chosen claim language of the patentee, and it is not a vehicle for the substitution of language from the specification absent a showing of some necessity. *See Interactive Gift Express*, 256 F.3d at 1331. Here, SpeedDate fails to show any such necessity for the substitution of the word "metrics." While it makes much of the way "metric" fits the invention, it fails to address the issue of how "criteria" does not.

### F.    '098 Patent Claim 4, '977 Patent Claim 1, "compatibility criteria"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Criteria for determining that two or more people are compatible | predetermined metrics used to determine a compatibility score between and among two users |

Although it found it sufficient to rewrite "compatibility criteria" as "predetermined metrics" for the previous phrase, SpeedDate argues that further uses of the term should carry the additional limitation of being "used to determine a compatibility score between

and among two users." SpeedDate admits that "compatibility criteria" encompasses a "match (e.g. equals or opposites)," but asserts that the determination of a match necessarily constitutes a scoring mechanism. (Def.'s Br. at 17.) While SpeedDate does not provide any reasoning in support of this assertion, the specification explicitly distinguishes a scoring system from a match. ('098 Patent, Col. 11:56-62.) As such, SpeedDate's addition of "compatibility score" should be rejected.

**G.    '098 Patent, Claim 4, "to determine interpersonal compatibility between at least two network participants"**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| To determine the compatibility between two or more people who are network participants | to determine how well two users would be able to exist, live together, or work successfully with each other |

SpeedDate does not explain why the term "compatibility" requires construction. It simply states that its proposed construction corresponds to the definition provided in the '098 Patent's related Provisional Application. While this may be true, it does not follow that this definition should replace the language actually used in the claim. To do so would disregard the patentee's obligation and right to choose this language. *See Interactive Gift Express*, 256 F.3d at 1331. Furthermore, the plain and ordinary meaning of "compatibility" is clearer than the phrase "able to exist, live together, or work successfully with." One can exist *with anybody*, live *with anybody*, and work succesfully with individuals with whom they are not compatible. SpeedDate's proposed language is thus broader and vaguer than the term "compatibility," and should be rejected accordingly.

### H.   '098 Patent Claim 4, '977 Patent Claim 1, "compatibility criteria [that] includes at least one characteristic and a threshold"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| criteria for determining that two or more people are compatible [that] includes one or more characteristics of a person and a threshold for matching people | predetermined metrics used to determine a compatibility score for two users [that] include (1) at least one facet that can be used to determine "compatibility" between two users; and (2) a threshold "compatibility" score, above which a match is determined to exist between two users and below which a match is not determined to exist |

#### 1.   "characteristic"

With the term "characteristic," SpeedDate once again dismisses the chosen language of the patentee. SpeedDate stakes its argument in favor of the term "facets" on the assertion that the specification uses the term "facets" to refer to characteristics of people that can be used to determine compatibility. (Def.'s Br. at 19.) Even taking this as true, it does not follow that "facets" is therefore a better word than "characteristics" to describe *characteristics* of people that can be used to determine compatibility. The patentee chose to use the word "characteristic" for the claim, and it should not be replaced with "facet" in the absence of any showing that it lacks clarity. *See Synthes USA*, 2011 U.S. Dist. LEXIS 14074, at *27.

#### 2.   "threshold"

SpeedDate construes "threshold" to mean a "threshold 'compatibility' score." In so doing, it overlooks the specification's express contemplation that a threshold may be a score or point system *or may be a "'match' (e.g equals or opposites)* . ('098 Patent, Col. 11: 57-60). SpeedDate's construction of threshold is thus at direct odds with the term's use in the specification.

### I.      '098 Patent, Claim 4, "applying the compatibility criteria to a plurality of records"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Applying to a plurality of records the criteria for determining that two or more people are compatible | using predetermined metrics to generate compatibility scores between two users |

SpeedDate's construction assumes that the present invention requires the computation of "compatibility scores." As discussed at Section II.F, *supra*, the specification makes clear that this is not the case.

### J.      '098 Patent, Claim 4, "wherein the participant specific data includes a chat time a first participant is available to chat"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Wherein the data specific to individual network participants includes a chat time a first participant is available to chat | Wherein the data associated with a first user includes a specific time designated by the first user that the first user will be available to communicate in real-time online |

The parties dispute whether "a chat time a first participant is available to chat" is limited to a specific chat time provided by that participant. SpeedDate asserts that it is, basing its argument on two exemplary embodiments set forth in the specification. (Def.'s Br. at 21-22.) Federal Circuit law is clear, however, that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.* 381 F.3d 1111, 1117 (Fed. Cir. 2004).

These exemplary embodiments, moreover, are not the specification's only commentary on the subject of "chat time." SpeedDate ignores the part of the specification that states that the disclosed invention allows for "notifying a user that another person

that he/she should be introduced to is either in the chat room, or *is on-line and available to go to the chat room* in order to converse." ('098 Patent, Col. 12:64-67.) SpeedDate additionally ignores the specification's incorporation by reference of a foreign patent, WO 98/16045, that teaches the notification of a user when their friend is "on-line." ('098 Pat. Col. 9, ll. 19-26, Col. 3, ll. 21-26).

**K.  '098 Patent, Claim 4, "to solicit an auto-response indicating whether the compatible participant wishes to chat with said first participant during the time indicated as available to chat"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| To allow a compatible network participant to make a selection indicating whether he/she wishes to chat with the other person during the time indicated as available to chat | MODIFIED: to seek a selection by a second user, determined to be compatible with the first user, as to whether or not the second user wishes to communicate in real-time online with the first user at the specific time designated by the first user, and wherein were the second user to make such a selection a response would be sent without further user intervention |

Similar to the dispute in the preceding section, Section II.J, *supra*, the parties' disagree as to the meaning of the phrase "time indicated as available to chat." SpeedDate again attempts to import two limitations into the phrase: that the time is "specific" and that the time is "designated by the first user." As discussed above, these limitations are derived solely from exemplary embodiments disclosed in the specification. Limitations cannot be imported into the claims on this basis. *Innova*, 381 F.3d at 1117.

**L.  '098 Patent, Claim 7, "personality trait derived from data provided by the user"; '098 Patent, Claim 8, "psychological personality trait"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| personality trait derived from data provided by the user | Plain and ordinary meaning | MODIFIED: a personality trait calculated by the system from data provided by the |

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| | | user using predetermined metrics |
| psychological personality trait | Plain and ordinary meaning | MODIFIED:  a personality trait relating to psychology |

The parties dispute whether "derived" should be construed as "calculated by the system . . . using predetermined metrics." As with the term "compatibility criteria," discussed at Section II.E.2, *supra*, SpeedDate again does not explain how the substitution of "predetermined metrics" adds any clarity to the phrase. In fact, SpeedDate does not argue that "derived" is vague or that it is in any way limited by the specification. Thus, although SpeedDate may have a preference for the term "predetermined metric," this is not a sufficient basis for its substitution into the claim when the term is clear on its face. *See Synthes USA*, 2011 U.S. Dist. LEXIS 14074, at *27.

**M.     '977 Patent, Claim 1, "automatically prompting"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Preamble is not a limitation.  If the Court determines a construction is necessary, Jedi proposes:<br><br>Notifying, without requiring users to click on the profiles of every participant to determine compatibility, | prompting [compatible users] without user intervention |

Because the preamble of claim 1 of the '977 Patent is not limiting, the term "automatically prompting" only need be considered insofar as it also appears in the body of the claim. Similar to the "automatically displaying" term of the '098 Patent, discussed in Section A, *supra*, "automatically prompting" refers to the solution provided by the '977 Patent whereby a network user can be informed of a compatible match without having to pro-actively search for this match. This does not preclude any user intervention

1   (the user can still pro-actively search for compatible matches), but simply assures the user

2   that she will be notified of at least one other network user that is determined to be

3   compatible.

4           **N.**    **'977 Patent, Claim 1, "accessing pre-existing data associated**
            **with a user"; '977 Patent, Claim 1, "where the pre-existing data is available**

5           **prior to initiation of collecting data for the user"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| accessing pre-existing data associated with a user | Plain and ordinary meaning | MODIFIED: obtaining data associated with a user that existed prior to a user providing data to the system |
| where the pre-existing data is available prior to initiation of collecting data for the user | Plain and ordinary meaning | where the pre-existing data is available for use by the system before a user provides any data to the system |

11           Jedi contends that both of the above terms are clear on their face, and should be

12   accorded their plain and ordinary meaning. In general, SpeedDate's constructions only

13   add confusion. However, of greater alarm to Jedi, SpeedDate also seeks to distort the

14   meaning of the claim language.

15           SpeedDate argues that the "data . . . available prior to initiation of collecting data

16   for the user" must be "available *for use by the system*." It argues that if the data was

17   generally available (as opposed to available for use by the system), then this phrase

18   would just be redundant with the "pre-existing" qualifier. (Def.'s Br. at 27.) The problem

19   with this argument, however, is that it rests on the premise that "pre-existing" necessarily

20   means "prior to initiation of collecting data for the user."

21           As the claim language "***initiation*** of collecting data" makes clear, the data

22   collection element of the claimed invention is not necessarily a single instantaneous step,

23

but rather may be a process (e.g. "presenting to the users at least one on-line survey"). ('977 Patent, Col. 1:33-40.) Data created during this process may exist prior to its access by a system. For example, when one fills out an on-line survey of personal information one creates personal data (i.e. data comes into existence.) However, until one clicks "submit," that data has not been accessed. Once "submit" is clicked, what the system accesses is *pre-existing* data (i.e data that existed before being accessed by the system). What is important is that, in this way, the term "pre-existing" does not necessarily mean "*prior to initiation* of collecting data for the user" in the context of the invention of the '977 Patent.

The "pre-existing data" of claim 1 of the '977 Patent is only data that is "available prior to initiation of collecting data for the user" because the claim explicitly provides this limitation. "[A]vailable prior to initiation of collect data" provides the temporal limitation for the term "pre-existing data." It thus does not need to include the further limitation--"available for use by the system"--conveniently included by SpeedDate, and there is nothing in the intrinsic record to support such a limitation.

Moreover, SpeedDate's contention must fail in light of the doctrine of claim differentiation. Under this doctrine, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). Claim 2 of the '977 Patent states: "The method according to claim 1, wherein the preexisting data is publicly available." By arguing that "data . . . available prior to the initiation of collecting data" means data available for use by the system prior to the

system's initiation of collecting data, SpeedDate is effectively arguing that the claim is limited to publicly available data. Because this is what is claimed in claim 2, the doctrine of claim differentiation governs, and SpeedDate's construction must fail for this additional reason.

### O.    '977 Patent, Claim 1, "and thereby indicating interpersonal compatibility between the users"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.  If the Court determines a construction is necessary, Jedi proposes:<br><br>and thereby indicating compatibility between two or more people between the users | and thereby indicating how well two users would be able to exist, live together, or work successfully with each other |

As discussed in Section G, *supra*, SpeedDate's proposed list ("exist, live together, or work successfully with each other") is an improper importation from the specification that is actually broader and vaguer than the claim language itself. It should not be adopted.

### P.    '977 Patent, Claim 2, "publicly available"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning.  If the Court determines a construction is necessary, Jedi proposes:  Available to the public | available to the system without any restrictions on access |

SpeedDate seems to argue that data is not publicly available unless it can be accessed by any system without restriction. (Def.'s Br. at 29.) This defies common sense. For example, the Federal Courts' PACER service indisputably contains data available to the public, but it cannot be accessed without a password. Moreover, it cannot be accessed by any system that does not have access to a working password. Finding no support in

common sense or the intrinsic record, SpeedDate's construction of "publicly available" must be rejected.

## III.   CONCLUSION

For the reasons set forth above and in Jedi's Opening *Markman* Brief, Jedi respectfully requests that the Court adopt its proposed claim constructions.

Respectfully submitted,

/s/      Daniel R. Ferri
Sean E. Brearcliffe (State Bar No. 016861)
RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Tel: (520) 792-4800
Fax: (520) 529-4262
Email: sbrearcliffe@rllaz.com

Raymond P. Niro *(Pro Hac Vice)*
Raymond P. Niro, Jr. *(Pro Hac Vice)*
Brian E. Haan *(Pro Hac Vice)*
Daniel R. Ferri *(Pro Hac Vice)*
NIRO, HALLER & NIRO
181 W. Madison St., Suite 4600
Chicago, Illinois  60602
Tel: (312) 236-0733
Fax: (312) 236-3137
Email: rniro@nshn.com
Email: rnirojr@nshn.com
Email: bhaan@nshn.com
Email: dferri@nshn.com

*Counsel for Jedi Technologies, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2012 the foregoing:

**PLAINTIFF JEDI TECHNOLOGIES, INC.'S *MARKMAN* REPLY BRIEF**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

Sean D. Garrison (State Bar No. 014436)
LEWIS AND ROCA LLP
40 North Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: sgarrison@lrlaw.com

Heidi L. Keefe
COOLEY LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
Email: hkeefe@cooley.com

***Counsel For Defendant Speeddate.com, Inc.***

/s/     Daniel R. Ferri
*Counsel for JEDI TECHNOLOGIES, INC.*